## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ALCOR ENERGY, LLC, | : | Chapter 11 |
| | : | Bankr. Case No. 18-12839 (CSS) |
| Debtor. | : | Jointly Administered |
| | : | |
| ALCOR ENERGY SOLUTIONS, LLC and | : | |
| BARRY STONEHOUSE, | : | Adv. Proc. No. 19-50097 (CSS) |
| | : | |
| Appellants, | : | |
| v. | : | Civ. No. 19-597-RGA |
| | : | |
| ALCOR ENERGY, LLC, | : | |
| | : | |
| Appellee. | : | |

## MEMORANDUM ORDER

Pending before this Court is an appeal by Alcor Energy Solutions, LLC ("Old Alcor") and Barry Stonehouse from a March 20, 2019 order (Adv. D.I. 47) ("Preliminary Injunction"), which was entered by the Bankruptcy Court in an adversary proceeding initiated by the above-captioned Chapter 11 debtor Alcor Energy, LLC ("Debtor"). The Preliminary Injunction was entered against Old Alcor and Stonehouse ("Defendants") and enjoined them from disclosing the Debtor's trade secrets, soliciting actual or potential customers of the Debtor until July 31, 2020, and interfering with the Debtor's ongoing contractual or business relationships.[1] For the reasons set forth below, the appeal is dismissed.

1.  **Background.** This dispute arises from a series of agreements between the Debtor and Defendants. Since its formation on May 19, 2017, the Debtor has operated a portable

---

[1] The docket of the Chapter 11 case, captioned *In re Alcor Energy, LLC*, No. 18-12839 (CSS) (Bankr. D. Del.) is cited herein as "B.D.I. __," and the docket of the adversary proceeding, captioned *B&B Holdings Limited, LLC d/b/a Texas SWD v. Alcor Energy, LLC*, Adv. No. 19-50097 (CSS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __." The appendix filed in support of Defendants' opening brief (D.I. 11) is cited herein as "A__," and the supplemental appendix filed in support of the Debtor's answering brief (D.I. 15) is cited herein as "AA__."

turbine generator business pursuant to which generators were rented primarily to oil and gas operators in need of power in remote places that are not easily connected to conventional power grids. In addition to its core electrical-generation business, and at issue in the parties' dispute, the Debtor claims to have a proprietary wastewater treatment and processing solution in development as part of its ongoing efforts to expand the suite of services that it provides to oil and gas operators and other potential energy, industrial, and agricultural customers. (A0015).

2. The Debtor's business derives from Old Alcor, an Arizona limited liability company, formed on March 24, 2009, and AES Oil Field Services, LLC ("AES Oil"), an Arizona limited liability company, formed on May 25, 2012. (A0510).

3. The Debtor was formed on May 19, 2017, and on May 23, 2017, Barry Stonehouse, Bruce Jorgenson, and Syau-fu Ma, as members of Old Alcor, executed a Contribution Agreement whereby Old Alcor and AES Oil contributed all of their business assets (as defined in the Contribution Agreement, the "Alcor Assets") to the newly-formed Debtor in exchange for a 50% interest in the Debtor. *Id.* The assets that Old Alcor and AES Oil contributed to the Debtor under Section 1.1 of the Contribution Agreement included client and customer lists, trade secrets, proprietary know-how, processes, proprietary technology, and all other intangible property. (A511-12). Schedule 1.1(f) specifically identified Old Alcor's and AES Oil's designs for water cleaning and evaporation technology as "Intellectual Property" that was contributed to the Debtor:

> Designs, processes, schematics, know-how and similar items attached hereto or included in the data files listed on the accompanying attachments hereto. Patent application(s) relating to waste heat recovery, water cleaning and evaporation technologies (to be assigned to the [Debtor] promptly following Closing).*
>
> *Barry Stonehouse will cause the applicable entity holding these rights, if other than Alcor or AES, to convey same to the [Debtor].

(A0536). Numerous schematics and engineering data files were attached to Schedule 1.1(f).

2

4. Concurrently with the Contribution Agreement, the Debtor entered into a Consulting Services Agreement with Stonehouse and AES Energy Services, LLC ("AES Energy"), one of Stonehouse's affiliates, pursuant to which Stonehouse would "serve in an executive capacity" for the Debtor. (A580). Stonehouse served as an officer and LLC manager of the Debtor until his resignation on July 31, 2018. Under Section 6.2 of the Consulting Services Agreement, Stonehouse acknowledged the Debtor's ownership of "Work Product" developed during his time with the Debtor:

> [Stonehouse] acknowledges that all inventions, innovations, improvements, developments, methods, processes, programs, designs, analyses, drawings, reports, and all similar or related information (whether or not patentable) that relate to [the Debtor's] or any of its affiliates' actual or anticipated business, research and development, or existing or future products or services and that are conceived, developed, contributed to, made, or reduced to practice by [Stonehouse] (either solely or jointly with others) while in service to [the Debtor] or any of its affiliates (including any of the foregoing that constitutes any proprietary information or records) (collectively, "Work Product") belong to [the Debtor] or such affiliate, and [Stonehouse] hereby assigns, and agrees to assign, all of the above Work Product to [the Debtor] or to such affiliate, as applicable.

(A583-84). The Alcor Assets under the Contribution Agreement and the Work Product under the Consulting Services Agreement are referred to herein collectively as the "Estate Property."

5. Stonehouse also agreed to several important restrictions under the Consulting Services Agreement. Pursuant to Section 6.1 of the Consulting Services Agreement, Stonehouse agreed to maintain the confidentiality of the Debtor's "Confidential Information," which was defined to include "customer information and lists, proprietary technology and processes, products and design elements, know-how and other technical information, pricing and cost information and data, trade secrets, business strategies, and business opportunities." (A583). Under Section 7 of the Consulting Services Agreement, Stonehouse agreed not to compete with the Debtor, poach its employees, or solicit its customers during the term of his employment or for two years thereafter. (A585). In Section 8 of the Consulting Services Agreement,

Stonehouse agreed that the Debtor would be irreparably harmed by any breach of Section 6 or 7. (A585-86).

6. Finally, Stonehouse agreed to the provisions contained in Section 9 of the Consulting Services Agreement titled "Executive's Acknowledgments":

> [Stonehouse] acknowledges that the provisions of Sections 6, 7 and 8 above are in consideration of [the Debtor's] willingness to engage [AES Energy] and [Stonehouse] as provided in this Agreement and to disclose Confidential Information to [Stonehouse], as well as additional good and valuable consideration. In addition, [Stonehouse] acknowledges that the restrictions contained in Sections 6 and 7 above do not preclude [Stonehouse] from earning a livelihood, nor do they unreasonably impose limitations on [Stonehouse's] ability to earn a living. [Stonehouse] acknowledges that the potential harm to [the Debtor] of the non-enforcement of Sections 6 and 7 above outweighs any potential harm to [Stonehouse] of its enforcement by injunction or otherwise. [Stonehouse] acknowledges that he has carefully read this Agreement and has had an opportunity to discuss it and its ramifications with independent counsel of his choice, and [Stonehouse] has given careful consideration to the restraints imposed upon him by this Agreement and is in full accord as to their necessity for the reasonable and proper protection of confidential, proprietary and competitive information of [the Debtor] and its affiliates now existing or to be developed in the future. [Stonehouse] expressly acknowledges and agrees that each and every restraint imposed by this Agreement is reasonable with respect to subject matter and time period, and [Stonehouse] further agrees not to assert in any court or other forum that any such restraint is unreasonable or overly burdensome upon [Stonehouse].

(A0586).

7. B&B Holdings Limited, LLC d/b/a Texas SWD,[2] an entity formed by Stonehouse and Jorgenson, filed a complaint initiating an adversary proceeding against the Debtor seeking the return of certain generators. (Adv. D.I. 1). The Debtor filed its answer, counterclaims, and third-party complaint against Texas SWD, Old Alcor, AES Energy, Jorgenson, and Stonehouse (Adv. D.I. 4) ("Third-Party Complaint"). The Third-Party Complaint alleged that Defendants misappropriated the Debtor's assets and were using those assets to usurp the Debtor's business

---

[2] During these proceedings it was revealed that "Texas SWD" was an alias for "B&B Holdings Limited, LLC" – an entity formed in 2004 by Stonehouse and Jorgenson. During trial, Stonehouse revealed that AES Energy also does business as "Texas SWD." (A0261). The Bankruptcy Court described this as a corporate "shell game" and stated that "to the extent it creates ambiguity in this record, that's on the Defendants." (A0341).

4

opportunities. On February 28, 2019, the Debtor filed its motion for temporary restraining order and preliminary injunction (Adv. D.I. 7, 8), which Defendants opposed (Adv. D.I. 17, 18, 19, 20).

8. Stonehouse filed a declaration in support of his opposition to the Debtor's motion, in which he asserted, *inter alia*, that Texas SWD, which was "still in the development state and ha[d] no customers or revenue" operated in a different market sector and had different business targets that those of the Debtor (Adv. D.I. 18 at 2-3); that while Stonehouse had developed a concept to use a turbine engine to clean/evaporate contaminated water to reusable quality, to date that concept had not been reduced to practice or commercialized by the Debtor (*id.* at 5); that during his engagement with the Debtor, the Debtor never spent any time or money or held a meeting to plan or budget for the further development of wastewater cleaning technologies (*id.*); that although the Contribution Agreement required Stonehouse to contribute "Intellectual Property" neither he nor the other Defendants owned any patent or patent applications, trademarks, or copyrights, and had only "conceptual drawings for wastewater cleaning (or waste heat recovery) technologies that [were] not reduced to practice" and which Defendants had contributed to the Debtor in accordance with the agreements (*id.* at 9); and that Stonehouse had never contacted any current or potential customers of the Debtor (*id.* at 17-18).

9. Following discovery, briefing, and a three-day trial with testimony by two witnesses – Wiley Zimmerman, the CEO of the Debtor, and Stonehouse, as the Debtor's former officer and LLC manager – the Bankruptcy Court provided the following summary of its view on the case and the witnesses:

> We had two witnesses. We had Mr. Zimmerman and Mr. Stonehouse. I found Mr. Zimmerman to be relatively credible. I found Mr. Stonehouse to be wholly lacking in credibility. In short, the TRO Defendants' behavior here is outrageous, perhaps fraudulent and either clearly in violation of the agreements that were signed or assist[ing] in abetting, through civil conspiracy, Mr. Stonehouse's violations of his duties. . . . Mr.

5

>   Stonehouse's testimony was evasive, inconsistent, and in complete disregard of his
>   obligations under the contract.

(A340-41). On March 20, 2019, the Bankruptcy Court entered the Preliminary Injunction indicating that a further hearing on the Debtor's request for a permanent injunction would be required. (Adv. D.I. 47). On March 29, 2019, Defendants filed a timely appeal. (D.I. 1). As of the date hereof, the docket of the adversary proceeding reflects that no final hearing for a permanent injunction has been scheduled.

10. **Jurisdiction.** Defendants' opening brief asserts simply: "This Court has appellate jurisdiction under 28 U.S.C. § 158(a)(1) over the [Preliminary Injunction]." (D.I. 10 at 3). The Debtor asserts that the appeal must be dismissed because the Preliminary Injunction is an interlocutory order, Defendants did not seek leave to appeal the Preliminary Injunction, and Defendants cannot meet the standard for leave to appeal an interlocutory order. (*See* D.I. 14 at 12-14).[3]

11. Defendants filed their opening brief on June 27, 2019 (D.I. 10), and the Debtor filed its answering brief on August 1, 2019 (D.I. 14). Defendants' reply brief was due August 16, 2019. (D.I. 9). They chose not to file a reply brief. Defendants have provided no argument in support of their assumption that 28 U.S.C. § 158(a)(1) confers jurisdiction on the Court, and they have waived any argument that the appeal meets the standard for permissive appeal.

12. Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Under 28 U.S.C. § 158(a):

---

[3] The Debtor further asserts that, to the extent this Court determines that it possesses jurisdiction over the appeal, Defendants' appeal fails on its merits, as the undisputed facts established at trial demonstrated that the Defendants have misappropriated estate property, used it to compete with the Debtor, that the balance of harms weighs in favor of the Debtor, and that the Bankruptcy Court acted well within its discretion in entering the Preliminary Injunction. (D.I. 14 at 14-39). Because the Court concludes that it lacks jurisdiction over this appeal, the Court does not reach the merits of the appeal.

6

> The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . (3) and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges under section 157.

28 U.S.C. § 158(a).

13. **Discussion.** The plain language of the statute "persuasively suggest[s] that all interlocutory orders, including injunctions, may only be appealed with leave of court." *First Owners' Ass'n of Forty Six Hundred v. Gordon Properties, LLC*, 470 B.R. 364, 372 (E.D. Va. 2012); *see also* 16 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 3926.1 (3d ed. 2017) ("There is no provision for appeal as of right from an injunction order of a bankruptcy judge to the district court."). The Debtor argues that courts recognize that the grant of a preliminary injunction constitutes an interlocutory order that requires leave to appeal pursuant to 28 U.S.C. §§ 158(a) and 1292(b). (D.I. 14 at 12 (citing *In re Quigley, Inc.*, 323 B.R. 70 (S.D.N.Y. 2005)).

14. In determining whether an order of the Bankruptcy Court is final, the Court is required to take a flexible, pragmatic approach. *In re Reliant Energy Channelview, LP*, 397 B.R. 697, 699 (D. Del. 2008) (citing *In re Armstrong World Indus., Inc.*, 432 F.3d 507 (3d Cir. 2005)). Although no specific combination of factors is dispositive on the question of finality, the Court should consider, among other things:

> (1) whether the order leaves additional work to be done by the Bankruptcy Court, (2) whether the order implicates purely legal issues, (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate, (4) the necessity for further fact-finding on remand to the Bankruptcy Court, (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation; and (6) the furtherance of judicial economy.

*In re F-Squared Inv. Mgmt. LLC*, 2019 WL 1417464, at *3 (D. Del. Mar. 29, 2019).

15. Reviewing the circumstances in this case in light of the aforementioned factors and the pragmatic approach to finality required for Bankruptcy Court orders, the Court concludes that the Preliminary Injunction not a final and immediately appealable order. First, the Bankruptcy Court recognized that a permanent injunction hearing will be required. (A345).

7

Second, the issuance of the preliminary injunction was a factually intensive inquiry, and the legal standard for issuing such injunctions is well established. Third, the preliminary injunction was a pivotal first step in protecting the Debtor's assets from misappropriation. Fourth, no further fact finding is necessary, as the uncontroverted facts established at trial regarding Defendants' conduct support preliminary injunctive relief. The fifth factor is, at best, in equipoise because no judicial determination will preclude the subsequent permanent injunction hearing. Finally, judicial economy favors a determination that the preliminary injunction is interlocutory because, regardless of whether the Court entertains this appeal, a permanent injunction hearing is still necessary.

16. The Preliminary Injunction is not a final appealable order, and, as such, it may only be appealed with leave of court. The Court may, in its discretion, grant leave to parties in bankruptcy to appeal interlocutory orders. *See* 28 U.S.C. § 158(a)(3). When the appellant chooses not to make any argument supporting the Court's exercise of discretion, the argument is waived, and, even if it were not waived, there would be no reason to exercise the discretion to permit the appeal.

17. **Conclusion.** The Preliminary Injunction is not a final order. Defendants cannot appeal as of right and have waived any other basis for an appeal.

NOW, THEREFORE, it is HEREBY ORDERED that the appeal is dismissed. The Clerk is directed to **CLOSE** Civ. No. 19-597-RGA.

Entered this 10 day of December, 2019.

United States District Judge